UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STRATEGIC ENVIRONMENTAL PARTNERS, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>STATE OF NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, *et al*,<br><br>*Defendants.* | Civil Action No. 12-3252<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court on the Cross-Motion to Stay filed by Plaintiff Strategic Environmental Partners, LLC ("SEP"). D.E. 257. Defendants the Township of Roxbury, Borough of Netcong, Township of Minehill, Township of Jefferson, Township of Denville, Borough of Madison, City of Linden, and Revlon, Inc. and Third-Party Defendant Montecalvo Disposal Services, Inc. (collectively "Defendants") filed a brief in opposition to Plaintiff's motion. D.E. 258. For the reasons stated below, the motion is **DENIED**.

I.   **BACKGROUND**

SEP acquired title to a parcel of land known as the Fenimore Landfill (the "Landfill" or "Property") in 2010 "with the intent of properly closing the Landfill and developing the Property with photovoltaic solar panels and other renewable alternative energy sources." Am. Compl. ¶ 24, D.E. 20. In 2011, SEP entered into a Closure and Post-Closure Plan with the New Jersey Department of Environmental Protection ("NJDEP"), which authorized SEP to cap and close the Landfill. Certification of Matthew M. Fredericks, Esq. in Support of Plaintiff's Cross-Motion for

1

a Stay of Civil Proceedings ("Fredericks Cert.") ¶ 5, D.E. 257-2. SEP apparently began capping the landfill because on May 30, 2012, SEP filed this action alleging that it incurred costs of approximately $2.2 million in furtherance of its efforts to remediate the Landfill. Fredericks Cert. ¶ 6; *see also* Am. Compl. ¶ 25. SEP alleges that Defendants are responsible for its remediation costs pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601-9675, and the New Jersey Spill Act (the "Spill Act"), N.J. Stat. Ann. § 58:10-23.11, *et seq.*, and seeks a declaratory judgment establishing Defendants' liability. *See generally* Am. Compl.; *see also* Fredericks Cert. ¶¶ 6-8.

On December 27, 2012, the Court entered a Pretrial Scheduling Order requiring the parties to exchange their Fed. R. Civ. P. 26 initial disclosures by February 22, 2013 and serve written discovery requests by March 11, 2013. D.E. 167. Pursuant to the Pretrial Scheduling Order, the parties exchanged Rule 26 disclosures and engaged in limited discovery. Fredericks Cert. ¶ 14. While discovery in this litigation progressed "SEP continued to [sic] with its efforts to remediate the Landfill." *Id.* ¶ 15. However, on June 26, 2013, the NJDEP seized the Property pursuant to an Emergency Order due to SEP's failure to decrease hydrogen sulfide emissions at the Landfill and comply with the Closure Plan and court orders. *See* Emergency Order, Fredericks Cert., Ex. C. NJDEP has had continuous possession of the Landfill since it seized the land on June 26, 2013.[1] Fredericks Cert. ¶ 31.

---

[1] SEP challenged the NJDEP's authority to issue the emergency order and the seizing of its land in New Jersey state court. The Appellate Division concluded that the NJDEP exceeded its authority under N.J. Stat. Ann. § 13:1E-125.4 "by seizing control of SEP's property without first securing judicial approval" and erred in relying on hydrogen sulfide levels that were measured before the Legacy Landfill Law, the law under which the NJDEP seized the Landfill, was passed. *Strategic Envtl. Partners, LLC v. NJDEP*, 438 N.J. Super. 125, 131 (App. Div. 2014). The Appellate Division remanded the matter to the Law Division to determine whether the hydrogen sulfide levels present on June 26, 2013 created an "imminent threat to the environment," which would have permitted the NJDEP to issue an Emergency Order pursuant to N.J. Stat. Ann. § 13:1E-

In light of the NJDEP's seizure of the Landfill, the Court stayed this matter on July 23, 2013. *See* Fredericks Cert. ¶ 17; D.E. 209. On August 8, 2013, the matter was administratively terminated. D.E. 212. The matter was returned to the active civil calendar on July 22, 2015 (D.E. 227), and on November 5, 2015, Defendants were granted leave to file a single, joint motion for summary judgment limited to the issue of SEP's standing to bring suit under CERCLA. D.E. 241. Defendants filed their joint motion for summary judgment on February 23, 2016, arguing that SEP does not have standing to assert a cause of action under CERCLA because it failed to provide information to establish that it incurred response, removal or remedial costs as required pursuant to CERCLA. D.E. 248-2.

On February 2, 2016, shortly before Defendants filed their motion for summary judgment, the New Jersey State Grand Jury issued a six-count indictment against SEP and Richard Bernardi, Sr., whose wife Marilyn Bernardi is the sole member of SEP, for conduct related to acquiring the Landfill and entering into the consent decree with the NJDEP. Fredericks Cert. ¶ 24. Count One of the indictment alleges that SEP and Mr. Bernardi made material, false representations as to SEP's "financial condition . . . or the ability to generate revenue through solar power generation equipment" in order to obtain a contract with the NJDEP. Indictment at 1-2, Fredericks Cert., Ex. E. Count Two alleges that SEP and Mr. Bernardi obtained a contract with the NJDEP "by purposefully creating or reinforcing the false impression as to the financial condition of SEP or the ability to generate revenue through solar power generation equipment." *Id.* at 3. Count Three alleges that SEP and Mr. Bernardi transferred funds derived from criminal activity between financial institutions "to conceal or disguise the nature, location, source, ownership or control of

---

125.9 without court approval. *Id.* at 143. To the Court's knowledge, the Law Division has not yet ruled on the matter.

the property." *Id.* at 4. Count Four alleges that SEP and Mr. Bernardi obtained a mortgage "by purposefully creating or reinforcing the false impression that SEP possessed the ability to cause solar generating equipment to be placed on that property and generate revenue to assist SEP in paying off the mortgage." *Id.* at 5. Count Five alleges that SEP and Mr. Bernardi obtained the services of an engineering company "by creating or reinforcing the false impression that SEP intended to begin paying the engineering company for work performed for SEP relating . . . to the Fenimore Landfill." *Id.* at 6. Count Six alleges that Mr. Bernardi controlled or operated SEP "for the furtherance or promotion of the criminal objects." *Id.* at 7.

With leave of the Court (D.E. 256), SEP filed this cross-motion to stay on April 11, 2016, instead of filing an opposition to Defendants' motion for summary judgment. D.E. 257. SEP argues that this case should be stayed in light of the criminal matter because each count of the indictment "relates to or alleges misconduct in connection with SEP's acquisition, ownership and/or redevelopment of the Fenimore Landfill." Plf's Br. at 7, D.E. 257-4. SEP further argues that counsel for SEP and Mr. Bernardi "have advised Richard Bernardi and Marilyn Bernardi (SEP's only member) to invoke their right not to testify under the Fifth Amendment." *Id.* Defendants filed a brief in opposition to SEP's cross-motion to stay. D.E. 258.

## II.   LEGAL STANDARD

A district court possesses the "inherent discretion to stay a proceeding whenever the interests of justice mandate such action." *Akishev v. Kapustin*, 23 F. Supp. 3d 440, 445 (D.N.J. 2014). This discretion is derived from the court's "inherent authority to control the disposition of the causes on its docket with economy of time and effort." *Id.* (internal quotation omitted). However, "[a] stay of a civil case is an extraordinary remedy." *Walsh Secs., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 526 (D.N.J. 1998).

Although a court is not required to stay a civil case when there are related, pending criminal proceedings, "it may be warranted in certain circumstances." *Id.* To determine whether to grant a stay under such circumstances, a court will consider the following factors: (1) the extent to which the issues in the criminal and civil cases overlap; (2) the status of the case, including whether any party has been indicted; (3) the non-movant's interest in proceeding expeditiously weighed against the prejudice that the non-movant would face from a delay; (4) the private interests of and burden on movant;[2] (5) the interests of the court; and (6) the public interest. *Id.* at 527 (citing *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995)).

### III.  DISCUSSION

#### 1.  Similarity of the Issues

The similarity of issues between the criminal and civil matter is "the most important issue . . . in determining whether or not to grant a stay." *Id.* (internal quotation omitted). When there is a significant overlap between the civil and criminal matters self-incrimination is more likely. But "[i]f there is no overlap, there would be no danger of self-incrimination and accordingly no need for a stay." *Transworld Mech., Inc.*, 886 F. Supp. at 1139; *see also Cress v. City of Ventnor*, No.

---

[2] In *Walsh Secs., Inc.* the court used the words plaintiff and defendant instead of non-movant and movant, respectively. 7 F. Supp. 2d at 527. In most cases the civil defendant is the party seeking the stay. *See, e.g. Colombo v. Bd. of Educ. for the Clifton Sch. Dist.*, No. 11-785 (CCC), 2011 WL 5416058, at *5 (D.N.J. Nov. 4, 2011) (granting stay where civil defendant sought to stay case because of criminal charges pending against him); *Cress v. City of Ventnor*, No. 08-1873 (NLH), 2009 WL 750193, at *1-2 (D.N.J. Mar. 18, 2009) (applying *Walsh* factors where defendants sought to stay Section 1983 matter in light of plaintiff's criminal proceeding). If the Court mechanically applied the factors based on the labels, however, it would result in a test that was different than that contemplated by the *Walsh* court. For example, as the moving party, the second factor would favor SEP as the plaintiff. The clear import of *Walsh*, however, was to consider the non-moving party in analyzing the third factor.

08-1873 (NLH), 2009 WL 750193, at *2 (D.N.J. Mar. 18, 2009) ("A court is less likely to grant a stay if the issues in the parallel civil and criminal proceedings do not completely overlap.").

Unlike many cases in which a stay is granted pursuant to the *Walsh* factors, the civil and criminal proceedings here do not arise from the same occurrence. *See, e.g., Colombo v. Bd. of Educ. for the Clifton Sch. Dist.*, No. 11-785 (CCC), 2011 WL 5416058, at *3 (D.N.J. Nov. 4, 2011) (granting stay where there was "significant overlap between the civil and criminal matters"); *Peterson v. Matlock*, No. 11-2594 (FLW), 2011 WL 5416571, at *4 (D.N.J. Nov. 7, 2011) (granting stay where civil and criminal matter arose from the same assault on plaintiff). Although this matter and the criminal matter both involve SEP and the Landfill, the issues central to each case are different. This matter addresses the alleged CERCLA response costs that SEP incurred after it acquired the Property, and "in furtherance of its plans to close the Landfill." Am. Compl. ¶ 25. In contrast, the criminal indictment addresses SEP and Mr. Bernardi's conduct in acquiring the Landfill and entering into the consent decree with the NJDEP. *See* Indictment, Fredericks Cert., Ex. E. Therefore, the evidence necessary to establish that SEP incurred response costs is likely different than evidence that is relevant to the criminal proceedings. SEP has not pointed to any evidence to the contrary. This factor, therefore, weighs against granting a stay. *See In re N.J. Tax Sales Certificates Antitrust Litig.*, No. 12-1893 (MAS)(TJB), 2014 WL 5512661, at *13 (D.N.J. Oct. 31, 2014) ("[W]hile the facts underlying both the civil and criminal matters overlap, the issues most relevant to Defendant's sentencing . . . ha[ve] little to do with the issues most relevant in this matter."); *In re Shubh Hotels Pittsburgh, LLC*, 495 B.R. 274, 289 (W.D. Pa. 2013) (concluding that overlap of issues in criminal and civil proceedings was insufficient to warrant a stay).

  2. **Status of the Criminal Case**

As for the second factor, "the strongest case for a stay of discovery in the civil case occurs during a criminal prosecution after an indictment is returned . . . [due] to the potential for self-incrimination." *Walsh Secs., Inc.*, 7 F. Supp. 2d at 527 (internal quotation omitted). However, each case must be evaluated individually. *Id.*

Despite the fact that indictments have been returned against SEP and Mr. Bernardi, the Court believes that at this stage of the civil proceeding the risk of self-incrimination remains low. As discussed, the civil and criminal cases address different issues. Importantly, the Fifth Amendment Privilege against self-incrimination does not extend to SEP, the only plaintiff in this case. *United States v. Diantonio*, No. 13-74, 2016 WL 3063808, at *6 (D.N.J. May 27, 2016). In addition, the pending motion for summary judgment is limited to the discrete issue of standing under CERCLA and is based on documents (or the lack thereof) that SEP produced as part of its Rule 26 disclosures in 2013.[3] *See* May 24, 2013 Letter from Defendant Township of Roxbury, D.E. 192 at 2-3 (arguing that based on SEP's Rule 26 disclosures, SEP cannot sustain a cause of action under CERCLA). Moreover, the information needed to establish response, removal or remedial costs is most likely in the form of SEP documents rather than testimony. Consequently, SEP should be able to rely on information it produced more than three years ago to oppose the motion. To the extent SEP believes that it needs to provide additional information, the Court notes that its sole member, Marilyn Bernardi, has not been indicted. Mrs. Bernardi is obviously not required to provide testimony and may choose to exercise her Fifth Amendment rights if she

---

[3] Indeed, in light of the requirements of Fed. R. Civ. P. 11(b)(3), it is hard to fathom that SEP did not have the critical information to establish standing pursuant to CERCLA when it filed its original complaint. The information would have been in the possession of SEP; SEP would not have needed to acquire it through discovery from the Defendants.

7

believes necessary, but SEP conceivably has the means to oppose the motion.[4] *See Colombo*, 2011 WL 5416058, at *5 ("[I]t is not unconstitutional to force a defendant to make the choice between waiving his Fifth Amendment rights and losing the civil case." (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318-19 (1976)). However, there appears to be little risk of self-incrimination at this time. Therefore, this factor weighs against granting the stay.[5]

### 3. Interests and Burdens on the Parties

Next, the Court must consider the burdens on and interests of the parties in the civil action in granting the stay. *United States v. All Articles of Other Sonic Generic Ultrasound Transmission Gel*, No. 12-2264-ES-SCM, 2013 WL 1285413, at *3 (D.N.J. Mar. 27, 2013). Defendants argue that they would be prejudiced if the Court were to "stay the very civil proceeding [SEP] filed against Defendants." Defs' Br. at 12, D.E. 258. Defendants argue that granting a stay would force them to incur continued fees and there is "no reason to delay a review of the substantive claims against Defendant where Plaintiff has had an opportunity in discovery to produce evidence, and has produced none." *Id.* at 12. The Court gives little credence to Defendants' argument, however,

---

[4] As an entity, SEP may not invoke the Fifth Amendment privilege and as the sole member of SEP, Mrs. Bernardi, may not invoke the privilege to avoid producing SEP documents. *See In re Grand Jury Empaneled on May 9, 2014*, 786 F.3d 255, 259 (3d Cir. 2015); *see also De'Omilia Plastic Surgery, PC v. Sweeton*, No. 12-06415 (FLW), 2013 WL 6070037, at *6 (D.N.J. Nov. 18, 2013) (concluding that Fifth Amendment privilege did not apply to single shareholder corporation). Outside of her role as records custodian for SEP, however, Mrs. Bernardi may invoke the Fifth Amendment privilege individually and cannot be compelled to testify. *United States v. Diantonio*, No. 13-74 (RMB), 2016 WL 3063808, at *6 (D.N.J. May 27, 2016) ("[T]o the extent that oral testimony is sought by the prosecution which goes beyond the scope of the custodian of records' identification, the Fifth Amendment privilege remains operative to be invoked by the individual.").

[5] The Court notes that its analysis might be different if the parties were actively engaged in discovery, as was the situation present in *Walsh Secs., Inc. See* 7 F. Supp. 2d at 526. Although the Court is not addressing the merits of the pending summary judgment motion, if the motion is denied and the parties need to engage in further discovery, the Court could re-evaluate staying this matter at an appropriate time in the future.

because Defendants are unlikely to incur costs if the matter is stayed. Because Defendants fail to establish any real prejudice, this factor is neutral. *See Colombo*, 2011 WL 5416058, at *4 ("To establish prejudice, [the party] must show a unique injury such as fading memories, asset dissipation, or an attempt to gain an unfair advantage from the stay.").

On the other hand, SEP argues that it would be burdened if the civil case were not stayed because to oppose the pending motion for summary judgment "SEP will have to rely upon a statement from either Richard Bernardi (who has been indicted) or Marilyn Bernardi (whose husband and Limited Liability Company have been indicted)." Plf's Br. at 10. In contrast, SEP argues that there would be no prejudice if this case were stayed because it "has been pending for approximately four years and was stayed by the Court for much of that time." *Id.*

The Court concludes that the burden SEP may suffer if the case is not stayed is minimal. SEP seeks to indefinitely stay a matter that it voluntarily and affirmatively brought more than four years before it was criminally indicted, and in which the central issue is different than the criminal matter. SEP presumably had proof that it incurred CERCLA response costs when it filed the instant matter[6] and this proof should have been included in its Rule 26 disclosures, which were produced years before the criminal indictments were returned. Thus, the Court sees no reason to delay its consideration of the pending motion for summary judgment. Moreover, SEP does not need to engage in any additional discovery at this time because SEP is the party who already possesses (or should be in possession of) the information at issue. As discussed, any additional information SEP wants to provide to establish its response costs is likely not related to the criminal

---

[6] *See* Fed. R. Civ. P. 11(b)(2) (indicating that by signing a pleading, an attorney certifies to the best of his "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions [in the pleading] have evidentiary support").

matter and can be brought through Mrs. Bernardi, who has not been indicted. As a result, this factor weighs against granting the stay.

### 4. The Court's Interests

The Court must also consider its own interests in determining whether to grant the stay. The Court "has an interest is resolving individual cases efficiently" and effectively managing its caseload. *Walsh Secs., Inc.*, 7 F. Supp. 2d at 528. In this instance, there is no trial date in the criminal matter so a stay of the civil matter would be indefinite. This weighs against granting the stay. *See, e.g. Cress*, 2009 WL 750193, at *3 (D.N.J. Mar. 18, 2009) (concluding that an indefinite stay was not in the court's interests). Further, in many cases granting a stay to allow the criminal matter to proceed first streamlines the proceedings and helps expeditiously resolve the civil matter. *See, e.g. Colombo*, 2011 WL 5416058, at *6 ("A stay of a civil case where there are pending criminal proceedings promotes judicial economy because there is a reasonable expectation that the criminal investigation could clarify and define some issues in the civil matter.") (internal quotation omitted). For example, a conviction in a criminal case can often result in liability being established in the civil case due to the higher burden of proof in the criminal case. Those considerations, however, are not present here. Because the criminal and civil cases address different issues, the Court would gain no benefit in allowing the criminal matter to resolve before addressing this matter. Consequently, this factor also weighs against granting the stay.

### 5. The Public Interest

Last, the Court must consider the public interest in granting the stay. Although the public has an interest in having the Landfill capped, the public interest is not heavily implicated in this matter because the NJDEP still has possession of the Landfill. Any resolution of this matter will

likely have little effect on how and when the Landfill is capped. Consequently, this factor is neutral.[7]

## IV. CONCLUSION

Because each of the *Walsh* factors weighs against granting the stay or is neutral, SEP's Cross-Motion to Stay (D.E. 257) is **DENIED**. An appropriate order accompanies this opinion.

Dated: June 8, 2016

_____
John Michael Vazquez, U.S.D.J.

---

[7] SEP also argues that a stay should be granted pursuant to the factors set forth in *Power Survey, LLC v. Premier Util. Servs., LLC*, 124 F. Supp. 3d 338, 339 (D.N.J. 2015). *Power Survey* addressed whether a stay should be granted pending *inter partes* review of all claims in a patent case. *Id.* at 339. In concluding that a stay was appropriate in *Power Survey*, the court considered: (1) whether a stay would unduly prejudice or present a clear tactical advantage to the nonmoving party; (2) whether a stay will simplify the issues in question; and (3) whether discovery is complete and a trial date has been set. *Id. Power Survey*, however, is readily distinguishable on the facts, and in light of the concurrent criminal and civil matters here, use of the *Walsh* factors is more appropriate to determine whether to grant a stay. *See, e.g. Cress*, 2009 WL 750193, at *2 (using *Walsh* factors in denying a motion to stay Section 1983 case where the civil Plaintiff was involved in a related criminal matter). Moreover, even if the Court were to use the factors in *Power Survey, LLC*, it would still conclude that a stay was not appropriate – namely because a stay will not simplify the issues in question and discovery for the currently pending motion is complete.