**Not for Publication**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| STRATEGIC ENVIRONMENTAL PARTNERS, LLC, <br><br> *Plaintiff,* <br><br> v. <br><br> STATE OF NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, *et al*, <br><br> *Defendants.* | Civil Action No. 12-3252 <br><br> **OPINION** |

**John Michael Vazquez, U.S.D.J.**

In this case, Plaintiff brings claims against Defendants pursuant to the Comprehensive Environmental Response Compensation and Liability Act of 1980 ("CERCLA") and the New Jersey Spill Compensation & Control Act (the "Spill Act"). Plaintiff bought a property containing a landfill in 2010. Soon thereafter, Plaintiff entered into several agreements with the New Jersey Department of Environmental Protection ("NJDEP") with the intent of capping and closing the landfill and then constructing solar panels on the property. It appears that Plaintiff hoped to start a profitable solar farm business. Things did not go as planned. Many disagreements and court actions ensued between Plaintiff and the NJDEP, and Plaintiff's principal was indicted on financial and fraud charges related to alleged misrepresentations to the NJDEP and diverting fees in violation of the agreements with the NJDEP. These issues are not before the Court, although the agreements with the NJDEP are relevant. Plaintiff now claims that testing performed in 2011

revealed hazardous substances on the property and seeks recovery pursuant to CERCLA and the Spill Act.

Currently pending before the Court is a Motion for Summary Judgment filed by Defendants Township of Roxbury, Borough of Netcong, Township of Mine Hill, Township of Jefferson, Township of Denville, Borough of Madison, City of Linden, and Revlon, Inc. as well as Third-Party Defendant Montecalvo Disposal Services, Inc. (collectively "Defendants"). D.E. 248. Plaintiff Strategic Environmental Partners, LLC ("SEP" or "Plaintiff") filed a brief in opposition to Defendants' motion, D.E. 261, to which Defendants replied. D.E. 266. In addition, following oral argument and a subsequent order, both Defendants, D.E. 281-83, 286, and Plaintiff, D.E. 285, provided supplemental briefing. The Court reviewed the submissions made in support and in opposition of the motion and did not hold additional oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons that follow, Defendants' motion for summary judgment is **GRANTED**.

I. **FACTS AND PROCEDURAL HISTORY**

A. **Factual Background**[1]

In 2010, SEP acquired title to the Fenimore Landfill (the "Landfill") "with the intent of properly closing the Landfill and developing the Property with photovoltaic solar panels and other renewable alternative energy sources." Am. Compl. ¶ 24, D.E. 20. The Landfill is located in Roxbury, New Jersey, and comprises approximately 60 acres of a property that is slightly over 100 acres. *Id.* ¶ 4. From the 1950s to 1970s, the Landfill accepted solid waste. Defendants' Statement of Material Facts Not in Dispute ("DSOMF") ¶ 2; D.E. 248. Plaintiff claims that

---

[1] The facts herein come from the evidence in the record.

during this time, Defendants sent garbage containing hazardous substances to the Landfill. In addition, although not in active use for a number of years, the Landfill was never officially closed before Plaintiff purchased it.

Following its acquisition of the property, in October 2011 SEP entered into a Closure and Post-Closure Plan (the "Plan") with the NJDEP to close the Landfill. Kunzman Cert., Exh. F (*Strategic Envtl. Partners, LLC v. New Jersey Dep't of Envtl. Prot.*, 438 N.J. Super. 125, 132 (App. Div. 2014)); D.E. 248. Thereafter, on October 6, 2013, SEP and NJDEP also entered into an Administrative Consent Order ("ACO"), which memorialized the Plan and the necessary procedures to effectuate it. The ACO did not require SEP to remove or remediate any hazardous materials from the Landfill. DSOMF ¶¶ 6-7.[2] In fact, neither CERCLA nor the Spill Act were mentioned in the ACO. Rather, the ACO stated that the parties were consenting to the ACO's terms pursuant to the authority of the NJDEP under the Solid Waste Management Act ("SWMA"). Kunzman Cert., Exh. A, pg. ID 877; D.E. 248.

The ACO noted that Plaintiff had conducted an investigation of the Landfill, including soil sampling, and that on June 14, 2011 SEP had submitted a closure plan that had been prepared by Matrix New World Engineering, Inc. Kunzman Cert., Exh. A, pg. ID 878; D.E. 248. The ACO also noted that SEP was required to complete closure of the Landfill by October 31, 2015.[3] DSOMF ¶ 10. To execute that closure, the ACO included SEP's agreement to use the

---

[2] The contents of the ACO are not in dispute; SEP, however, challenges the enforceability of the ACO. Plaintiff's Statement of Material Facts in Opposition ("PSOMF") ¶¶ 6, 8; D.E. 263.

[3] As noted, SEP and the NJDEP ultimately had numerous disputes concerning the Landfill. For example, SEP ordered NJDEP to cease receiving material onto the Landfill, DSOMF ¶ 18, and SEP filed an Order to Show Cause in New Jersey Superior Court to enjoin NJDEP from taking this action, PSOMF ¶ 18. Roxbury residents then filed a class action complaint and order to show cause against SEP in New Jersey's Law Division claiming that the Landfill constituted a nuisance due to malodorous fumes (caused by hydrogen sulfide) emanating from the Landfill.

3

"tipping fee" revenues[4] from the imported fill materials to fund the Landfill's closure. DSOMF ¶ 8. To this end, SEP accepted ground gypsum board (a non-hazardous substance) to close and cap the Landfill. *Id.* ¶¶ 11-12. The ACO, further, memorialized SEP's agreements to undertake numerous closure activities, including: "[t]he installation and sampling of groundwater monitoring wells at the Fenimore site" and "[the submission of] a complete design of the leachate treatment and discharge system . . . ." Kunzman Cert., Exh. A, pg. ID 878; D.E. 248. These agreements were all entered into "to effectuate the closure and ultimate development and installation of the solar photo voltaic system." *Id.* pg. ID 880.

The above is not in dispute. However, SEP claims that prior to its acquisition of the Landfill, each Defendant polluted and contaminated the Landfill with hazardous substances. SEP further alleges that the release, and threatened release, of those hazardous substances caused SEP to incur response costs. PSOMF ¶¶ 31-34. Defendants deny these allegations. DSOMF ¶¶ 31-34.

### B. Procedural History

On May 30, 2012 Plaintiff filed its initial Complaint. D.E. 1. Then, on September 17, 2012, Plaintiff filed an Amended Complaint, asserting three counts. D.E. 20. Plaintiff sought a

---

DSOMF ¶ 23. A New Jersey court dismissed this lawsuit. PSOMF ¶ 23. Subsequently, NJDEP issued an emergency order and seized the Landfill without seeking judicial approval. The New Jersey Appellate Division found NJDEP's order and seizure improper. DSOMF ¶¶ 24, 26. NJDEP then issued eleven administrative orders and penalty assessments against SEP, alleging that SEP had violated the SWMA. SEP opposed the NJDEP's orders and assessments, but the New Jersey Office of Administrative Law found that SEP had violated SWMA through the manner in which it had attempted to cap and close the Landfill. *Id.* ¶¶ 27-28.

[4] "Tipping fees are the rates that a disposal facility or transfer station charges the hauler who deposits waste at the facility." *Atl. Coast Demolition & Recycling, Inc. v. Bd. of Chosen Freeholders of Atl. Cty.*, 48 F.3d 701, 707 (3d Cir. 1995) (citation omitted). Plaintiff's principal is alleged, among other things, in the indictment to have violated the tipping fee provision by using the fees improperly.

declaratory judgment pursuant to CERCLA, 42 U.S.C. § 9601 *et seq.*, finding that Defendants were liable for "costs and expenses incurred and to be incurred by Plaintiff in response to the release and/or threatened release of hazardous materials on the property" (Count I); contribution pursuant to CERCLA (Count II); and contribution pursuant to the Spill Act, N.J.S.A. 58:10-23.11 *et seq.* (Count III). *Id.* ¶¶ 31-40.

In its Amended Complaint, Plaintiff claimed that it "incurred costs of approximately $2.2 [m]illion for equipment, supplies and professional fees as well as assessment and monitoring costs in furtherance of its plans to close the Landfill." *Id.* ¶ 25. These costs appear to be related to Plaintiff's agreement with the NJDEP to close the Landfill and transform it into a solar farm. As to hazardous substances, Plaintiff claimed that it had "incurred costs and expenses" and that it would continue to do so but that it was not yet possible to calculate the exact cost of the cleanup. *Id.* ¶¶ 29-30.

Defendants moved for summary judgment. D.E. 248. Plaintiff filed a motion to stay civil proceedings, D.E. 257, which Defendants opposed. D.E. 258. The Court denied Plaintiff's motion and ordered that any opposition to Defendants' summary judgment motion be submitted by June 22, 2016. D.E. 260. Plaintiff duly submitted its opposition brief, D.E. 258, to which Defendants replied. D.E. 266.

Defendants argued in their original briefing that Plaintiff had failed to present any evidence that it had incurred "any necessary response, removal or remedial costs in connection with the release or threatened release of hazardous substances at the [Landfill] within the meaning of, and as required by, CERCLA[.]" Defendants' Brief in Support of Motion for Summary Judgment ("Def. Brf.") at 1; D.E. 248. Defendants noted, for example, that Plaintiff had merely provided a letter from its counsel itemizing alleged costs but provided no supporting

5

documentation such as invoices. Kunzman Cert., Exh. D, pg. ID 1277-79; D.E. 248. Plaintiff's counsel's letter claimed a total amount of $5,592,920.07, including a testing charge of $39,844.13. *Id.* According to Defendants, Plaintiff likewise failed to provide any evidence that the alleged costs incurred had the necessary nexus to a release or threatened release of hazardous substances. Because Plaintiff failed to present evidence of the necessary costs, according to Defendants, Plaintiff does not have standing to maintain the action. Def. Brf. at 1-3; D.E. 248.

On July 25, 2016 the Court heard oral argument on Defendants' motion. D.E. 284. During the argument, Plaintiff's counsel represented that he had evidence to support the necessary CERCLA costs and expenses that had been incurred by SEP. The Court was somewhat suspect of counsel's representations, noting that SEP had pled that it had incurred such costs but had not produced supporting evidence in its Rule 26 disclosures or even in response to Defendant's summary judgment motion. Kunzman Cert., Exh. B, pg. ID 1269-71; Exh. D, pg. ID 1278; D.E. 248. Nevertheless, relying on Plaintiff's counsel's representations, the Court permitted SEP additional time to disclose the necessary evidence. Specifically, the record states as follows:

> The Court: I'm going to administratively terminate this motion. But I'm going to allow the defense to revive the motion with a new brief if they want to supplement their brief. . . . [Plaintiff] [y]ou have until August 22nd to get the defense all documents which you believe prove these costs.
>
> Mr. Fredericks: Yes, Your Honor.
>
> The Court: And again, I share [the Defendants'] concern that you're just going to turn over "we incurred these costs." But remember, you have to show the nexus to the hazardous substance here. I don't want, you know, costs that are unrelated to the CERCLA [or] Spill Act claims.

6

Transcript of Oral Argument held on July 25, 2016 at 35-36;[5] D.E. 284.

Following the hearing, the Court administratively terminated Defendants' summary judgment motion and, in accord with the colloquy above, ordered Plaintiff by August 22, 2017, to produce to Defendants "any and all documents referring, relating and/or demonstrating the actual incurrence of costs by Plaintiff for the [r]emoval or [r]emediation of hazardous substances" as defined by CERCLA. D.E. 278. The Court further ordered that Plaintiff produce documents that "describe and/or demonstrate that work described or referred to therein was actually performed by or on behalf of Plaintiff." *Id.*

After receiving Plaintiff's supplemental document production, Defendants requested that the Court reinstate their motion for summary judgment, D.E. 279, and the motion was reinstated. Defendants then submitted supplemental briefing in support of their motion, D.E. 281-83, 286, and Plaintiff submitted additional briefing in opposition. D.E. 285.

## II. SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not

---

[5] The Court made clear the type of evidence it expected Plaintiff to produce. For example, the Court informed Plaintiff's counsel: "[I]f you have evidence, and again, not your representations, but hard evidence, you know, contracts, invoices, proof of payment, proof that it's a hazardous substance, you know, the very basics to maintain one of these causes of action, we have to get it to the defense." Transcript of Oral Argument held on July 25, 2016 at 23; D.E. 284.

7

make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

8

## III. CERCLA

Plaintiff brings its action pursuant to Section 107 of CERCLA.[6] Section 107 allows private parties to hold potentially responsible parties liable for "any other necessary costs of response incurred by any other person" consistent with CERCLA. 42 U.S.C. § 9607(a)(4)(B). *Agere Sys., Inc.*, 602 F.3d at 225. Specifically, Section 107 provides, in relevant part:

> Section 107. (a) Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—
> . . .
> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
>
> (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—
> . . .
> (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan . . .

42 U.S.C.A. § 9607.

CERCLA does not definitively define "costs of response." The statute, however,

> broadly defines the term "response" as "remove, removal, remedy and remedial action," which are in turn defined to include "such actions as may be necessary to monitor, assess and evaluate the release or threat of release of hazardous substances," "[t]he cleanup of released hazardous substances from the environment," and "the disposal of removed material."

---

[6] Plaintiff failed to indicate which subsection of Section 107 it is basing liability on, but subsection (a)(3), and arguably subsection (a)(4), appear to be the subsections most closely mirroring the allegations in Plaintiff's Amended Complaint.

9

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 263 F. Supp. 2d 796, 863 (D.N.J. 2003), aff'd, 399 F.3d 248 (3d Cir. 2005) (citing 42 U.S.C. §§ 9601(23) and (25)). Thus, broadly speaking, under Section 107, removal and remedial costs must be expenses "directed at containing and cleaning up hazardous releases." *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 294 (3d Cir. 2000). Generally, "removal" actions refer to short-term clean up arrangements while "remedial" actions indicate a long-term effort to rehabilitate the property. *Commerce Holding Co. v. Buckstone*, 749 F. Supp. 441, 443-44 (E.D.N.Y. 1990) (citation omitted); *see* 42 U.S.C.A. § 9601(24) (defining "remedial action" as "those actions consistent with *permanent* remedy taken instead of or in addition to removal actions") (emphasis added). Here, Plaintiff's basic argument contends that it took, or planned to take, remedial action.

Further, response costs must also be consistent with the National Contingency Plan as set forth in 42 U.S.C. § 9605 and "must be necessary to the containment and cleanup of hazardous releases." *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 294 (3d Cir. 2000) (quoting *United States v. Hardage*, 982 F.2d 1436, 1448 (10th Cir. 1992) (internal quotation marks omitted)). The National Contingency Plan requires documentation of all costs that are to be recovered. *United States v. E.I. Dupont De Nemours & Co. Inc.*, 432 F.3d 161, 168 (3d Cir. 2005) (citing 40 C.F.R. § 300.160(a)(1) (2005)). In an action for private recovery, a plaintiff must prove that costs incurred were consistent with the National Contingency Plan. *Buckstone*, 749 F. Supp. at 444.

## IV. ANALYSIS

Here, the Court is presented with a single issue: whether, within the meaning of the CERCLA, SEP has provided sufficient evidence that it incurred necessary response costs in

connection with the release, or threatened release, of hazardous substances at the Landfill.[7] Plaintiff's basic argument is that it incurred nearly $40,000 in laboratory testing costs in connection with its plan to cap and close the Landfill, which Plaintiff contends qualifies as remedial action under CERCLA. Defendants disagree. Defendants first indicate that Plaintiff has failed to provide information from a person with personal knowledge, instead relying on a letter and certification from counsel as to the laboratory costs and the purposes of such testing. Defendants next argue that any laboratory testing performed was done so that Plaintiff could consummate its agreement with the NJDEP, *i.e.* cap the Landfill and turn the property into a profitable solar panel farm. Defendants note that the agreement with NJDEP was pursuant to the SWMA, with no mention of either CERCLA or the Spill Act.

As noted, before oral argument, Plaintiff did not produce evidence to support its claims for CERCLA response costs. Instead, Plaintiff's counsel indicated that Plaintiff had incurred $39,844.13 in laboratory testing relating to hazardous substances. PSOMF ¶ 50. In making this claim, Plaintiff's counsel pointed to laboratory documents that it had already disclosed to Defendants, although the lab costs (as noted) were set forth in a letter from Plaintiff's attorney. Testing expenses can, in appropriate circumstances, qualify as "costs of response" in a CERCLA action. *Wickland Oil Terminals v. Asarco, Inc.*, 792 F.2d 887 892 (9th Cir. 1986). However, Plaintiff did not provide any facts or evidence that tied this testing to a CERCLA response cost. The laboratory testing costs set forth in *counsel's* letter, therefore, were insufficient to create a genuine issue of material fact precluding summary judgment.

---

[7] The parties do not dispute that the Landfill is a "facility" as defined by CERCLA. 42 U.S.C. § 9601(9); *see Rhodes v. County of Darlington*, 833 F. Supp, 1163, 1177-78 (D.S.C. 1992) (finding that a landfill meets CERCLA's definition of facility).

Following the oral argument, Plaintiff produced another twelve hundred pages of documents to Defendants. Defendants' Reply Brief to Plaintiff's Opposition ("Def. Rpl."); D.E. 281. The documents show that laboratory testing was done on Plaintiff's property in approximately 2011 (although they are not clear as to what was tested or from which source it came). Plaintiff's counsel then attempted to establish the relevance of the documents. Plaintiff's *counsel* submitted a certification indicating that costs were incurred in investigating and discovering hazardous substances in the Landfill. Fredericks Cert.; D.E. 285. Such a factual assertion by Plaintiff's lawyer is wholly inappropriate and cannot be relied on by this Court. Local Civil Rule 7.2, expressly provides that "[a]ffidavits, declarations, certifications and other documents of the type referenced in 28 U.S.C. § 1746 shall be restricted to statements of fact *within the personal knowledge of the signatory*"[8] (emphasis added). Thus, the Court agrees with Defendants that counsel's letter and certification are insufficient for the Court to rely on in deciding the motion for summary judgment.

In his certification, Plaintiff's counsel asserts that testing of soil and water from the Landfill was performed by a laboratory named Alpha Analytical, Inc. Fredericks Cert. ¶ 4. Counsel admits that the samples were taken in 2011 in conjunction with the "long-term capping of the Landfill." *Id.* ¶¶ 5-6. Thus, the soil and water testing appears to be the same referenced in the ACO, which concerned the capping and closing of the Landfill pursuant to the SWMA (rather than CERCLA or the Spill Act). Counsel then concludes that because the laboratory testing revealed hazardous waste, the resulting costs were for the purpose of investigating and

---

[8] There are other deficiencies in Plaintiff's counsel's certification. For example, counsel cites case law and make legal arguments. *See* L. Civ. R. 7.2 (stating that as to affidavits, declarations, and certifications, "[a]rgument of the facts and the law shall not be contained in such documents. Legal arguments and summations in such documents will be disregarded by the Court and may subject the signatory to appropriate censure, sanctions or both.").

12

discovering hazardous substances and are, therefore, covered by CERCLA. *Id.* ¶¶ 7-10. As noted, however, the ACO makes no reference to the fact that the capping of the Landfill was to be performed as a "remedial action" pursuant to CERCLA. Instead the intended capping was pursuant to the NJDEP's authority under the SWMA and was part and parcel of Plaintiff's attempt to convert the property for use as a solar panel farm and other sources of renewable energy. To this end, the NJDEP permitted Plaintiff to accept non-hazardous waste and collect tipping fees. The fees were supposed to be used, at least in part, to subsidize the closing of the Landfill.

Putting aside the deficiencies in the certification as to laboratory costs, the cases cited by Plaintiff demonstrate why its argument fails. In its supplemental opposition, Plaintiff relies on three decisions: *Schaefer v. Town of Victor*, 457 F.3d 188 (2d Cir. 2006); *Reichold, Inc. v. United States Metals Refining Co.*, 655 F. Supp. 2d 400 (D.N.J. 2009); and *Bowen Engineering v. Estate of Reeve*, 799 F. Supp. 467 (D.N.J. 1992). In all three cases, the relevant state's environmental regulator had indicated that it was taking action, or contemplating action, pursuant to CERCLA. In *Schaefer*, the New York Department of Environmental Conversation ("NYDEC") ordered the owner of a landfill to investigate and remediate the land pursuant to CERCLA. 457 F.3d at 191-92. Similarly, in *Reichold*, the NJDEP investigated the site and ordered remediation of the site's contamination. 655 F. Supp. 2d at 406-07. And in *Bowen*, the NJDEP took soil samples from plaintiff's property, leading plaintiff to reasonably conclude that it would be responsible for future cleanup costs under CERCLA. 799 F. Supp. at 471-72.

Judge Thompson, in *Bowen*, set forth the elements of an action pursuant to Section 107:

    (1) the site is a "facility";

    (2) defendant falls within at least one of the four classes of "responsible persons" listed in § 9607(a)

13

> (3) there has been a "release" or "threatened release" of hazardous substance from the site; and
>
> (4) plaintiffs have incurred response costs *due to* the release or threatened release.

799 F. Supp. at 473 (emphasis added) (citation omitted). In *Reichold*, Judge Debevoise repeated the four elements using slightly different wording. 655 F. Supp. 2d at 444. Judge Debevoise described the fourth requirement as follows: "the release or threatened release has required or will require the plaintiff to incur 'response costs.'" *Id.* (citing *N.J. Tpk. Auth. v. PPG Indus. Inc.*, 197 F.3d 96, 103-04 (3d Cir. 1999)). Here, it is the fourth element where Plaintiff's proffered proofs falls short of creating a genuine issue of material fact precluding summary judgment.

Plaintiff argues repeatedly that a party can recover for response costs pursuant to a voluntary cleanup, that laboratory testing costs can qualify as response costs, and that capping a landfill can constitute remedial action. Plaintiff is correct insofar each action *may* be permitted or qualify. Plaintiff, however, is incorrect that each stated action *will automatically* meet the requirements of CERCLA.

As to the voluntary cleanup, Plaintiff has presented no evidence that it intends to remediate the Landfill due to CERCLA concerns. To the contrary, even though Plaintiff's laboratory tests reveal hazardous substances, the NJDEP permitted Plaintiff to close the site pursuant to the SWMA, not CERCLA or the Spill Act. As to Plaintiff's capping and closure of the Landfill, it is also pursuant to SWMA rather than CERCLA. There is no evidence that CERCLA required the capping and closing of the Landfill. The NJDEP did not require the capping and closing to comply with CERCLA standards concerning the release of hazardous substances. Instead, the NJDEP permitted Plaintiff to close the Landfill pursuant to the SWMA.

Although Plaintiff argues that the capping is "remedial action" pursuant to CERCLA, it provides no evidence that the proposed capping would meet the definition of remedial action as found in 42 U.S.C. § 9601(24). Remedial action under CERCLA requires "actions consistent with [a] permanent remedy . . . to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment." *Id.* Here, Plaintiff has presented evidence that the action would comply with the SWMA but not CERCLA. Thus, Plaintiff's reliance on *Schaefer* for the proposition that capping and closing a landfill constitutes remedial action is misplaced. In *Schaefer*, the NYDEC explicitly agreed to a particular type of landfill closing, which included the use of cover material, to combat the release and threatened release hazardous substances under CERCLA. 457 F.3d at 202-04. Here, by comparison, Plaintiff has not presented evidence that its contemplated actions would meet the requirements of "remedial action" under CERCLA.[9]

Turning to the Spill Act, although neither party addresses whether Plaintiff may assert a private right of action pursuant to the act, the Court finds that Plaintiff cannot. In its Amended Complaint Plaintiff asserted claims under both CERCLA (Counts I & II) and the Spill Act (Count III). Am. Compl. ¶¶ 24, D.E. 37-40. The Spill Act is the New Jersey analog to CERCLA and specifically incorporates CERCLA's definition of hazardous substances. It imposes strict

---

[9] Plaintiff's reliance on *Reichold* and *Bowen* are similarly misplaced. Plaintiff points to *Reichold* for the proposition that a party who undertakes a voluntary cleanup of land can recover response costs from other responsible parties pursuant to CERCLA. This is true as a general proposition, but Plaintiff must first show CERCLA recovery costs and it has not done so. Moreover, the citation in *Reichold*, 655 F. Supp. 2d at 447, on which Plaintiff relies does not even stand for the proposition cited. Instead, in that section, Judge Debevoise discussed CERCLA's statute of limitations and found that preliminary steps, such as "taking soil and water samples," do not start the statute of limitations. *Id.* Plaintiff cites *Bowen* for the proposition that assessment costs can be recoverable under CERCLA. In that case, the plaintiff had incurred such costs in response to inquiries, pertaining to CERCLA, from the NJDEP. 799 F. Supp. at 476. Plaintiff here has made no such showing.

15

joint and several liability on any person who has discharged a hazardous substance. *NJDEP v. Gloucester Environmental Mgmt. Servs., Inc.*, 821 F. Supp. 999, 1009 (D.N.J. 1993). The Spill Act allows a private party who enters into a remediation agreement with the NJDEP pursuant to the Spill Act to assert a private right of action and seek contribution costs for its removal of hazardous discharge. *Morristown Assocs. v. Grant Oil Co.*, 220 N.J. 360, 378–79 (2015); *Magic Petroleum Corp. v. Exxon Mobil Corp.*, 218 N.J. 390, 402–03 (2014). Here, Plaintiff never entered into a remediation agreement pursuant to the Spill Act with the NJDEP. Rather, Plaintiff entered into a Closure and Post-Closure Plan with the NJDEP pursuant to the SWMA. Kunzman Cert., Exh. E, pg. ID 1281; D.E. 248. That agreement does not give Plaintiff a private right of action under the Spill Act.

## V. CONCLUSION

Plaintiff, therefore, fails to support its allegations of having incurred CERCLA response costs or its right to bring a claim under the Spill Act. This lack of evidence is a sufficient basis to grant summary judgment to Defendants. *See Edmond v. Plainfield Bd. of Educ.*, 171 F. Supp. 3d 293, 304 (D.N.J. 2016) ("With respect to an issue on which the nonmoving party bears the burden of proof[,] the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." (quoting *Celotex Corp.*, 477 U.S. at 325)). Therefore, Defendants' motion for summary judgment is granted.

For the reasons set forth above, Defendants' motions (D.E. 248) is **GRANTED.** An appropriate Order accompanies this Opinion.

Dated: October 16, 2017

John Michael Vazquez, U.S.D.J.

16